620 So.2d 77 (1992)
William R. WYATT
v.
STATE.
CR-91-1078.
Court of Criminal Appeals of Alabama.
October 23, 1992.
Rehearing Denied December 30, 1992.
Certiorari Denied April 30, 1993.
*78 Michael Dasinger III, Robertsdale, for appellant.
James H. Evans, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1920554.
TAYLOR, Judge.
The appellant, William R. Wyatt, was convicted of the unlawful distribution of a controlled substance, cocaine, a violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to 20 years' imprisonment pursuant to the Habitual Felony Offender Act and was fined $5,000.

I
The appellant first contends that the trial court erred in not suppressing his confession. He contends that his confession was not voluntary because, he says, it was obtained as the result of an inducement by the officer questioning him.
"Before an accused's confession can be received into evidence against him, both voluntariness and a Miranda[1] predicate must be shown." Henderson v. State, 583 So.2d 276, 295 (Ala.Cr.App.1990), aff'd, 583 So.2d 305 (Ala.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). The appellant does not contend that his Miranda rights were not explained to him; only the voluntariness of his confession is at issue. "Because all extra-judicial confessions are prima facie involuntary, the State has the burden of proving voluntariness." Hamlet v. State, 574 So.2d 951, 953 (Ala.Cr.App.1990).
The evidence tended to show that the appellant was arrested at the Gulf Shores Surf and Racquet Club in Baldwin County, Alabama. The arresting officer, Steve Stuart, testified at the suppression hearing that he informed the appellant of his Miranda rights and that the appellant "voluntarily" made a statement. However, on cross-examination of Stuart, the appellant's attorney elicited the following:
"Q: Did you tell him that if he cooperated, thatthat you couldn't promise him anything; that the only thing you could do would be to relay that information that he cooperated to the District Attorney?
"A: Yes, sir. I probably told him that."
Here the circumstances are similar to those in Ex parte Weeks, 531 So.2d 643 (Ala.1988), where an officer told a defendant that if he confessed, the officer would make his cooperation "`known to the district attorney.'" 531 So.2d at 644. The officer admitted that this offer to speak to the district attorney was an offer to "`give something favorable to him if he would help.'" 531 So.2d at 644.
In Weeks, the Alabama Supreme Court held:
"[W]here a suspect is subjected to custodial questioning regarding alleged criminal activity, such an express promise would necessarily engender a hope of favor in the suspect's mind. Because the statement was not voluntarily given, it should have been excluded from the consideration of the jury."
531 So.2d at 644.
Confessions that are the result of express or implied promises are not voluntary and must be excluded from the jury's consideration. Guenther v. State, 282 Ala. 620, 213 So.2d 679 (1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803 (1969).
"`The types of promises which may make a defendant's statement involuntary are, e.g., promises of leniency, promises *79 to bring the defendant's cooperation to the attention of the prosecutor, the disclosure of incriminating evidence to the accused, and silence in response to the defendants offer to talk if his statement would not be used against him.'"
Siebert v. State, 555 So.2d 772, 777 (Ala.Cr. App.1989), aff'd, 555 So.2d 780 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990), quoting Siebert v. State, 562 So.2d 586, 592 (Ala.Cr.App.1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990) (emphasis in original). Here, Officer Stuart admits that he "probably" told the appellant that if he cooperated Stuart would so inform the district attorney. It is settled law that this implied promise of leniency is a promise of reward or hope of reward that renders the confession involuntary. The appellant's confession was coerced by the officer's promise to bring the appellant's cooperation to the attention of the prosecutor and was, therefore, not voluntary. The appellant's confession should have been suppressed.
The receipt of a coerced confession into evidence, however, is not always reversible error. The United States Supreme Court in Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), held that the harmless error rule applied to coerced confessions. Thus, the admittance of the appellant's confession would not be reversible error if this court can find its admittance was "harmless beyond a reasonable doubt."
In addition to the confession, there was other strong direct evidence of the appellant's guilt. The drug transaction was tape-recorded and the state's informant testified to the transaction's having taken place. The tape recording should not have been received into evidence for the reasons discussed in part II of this opinion. The credibility of the informant was placed in issue when evidence of his prior convictions was received at trial. As is usually the case, the defendant's confession is the most incriminating evidence against him in his trial. We are not able to say, therefore, that the receipt of the appellant's coerced confession was "harmless beyond a reasonable doubt." Fulminante, supra. Receiving the appellant's confession into evidence constituted reversible error.
Although we must reverse the trial court's judgment because reversible error was committed in receiving the confession into evidence in this case, we will address other issues that may be presented to the trial court in future proceedings.

II
The appellant contends that the trial court erred in receiving a tape recording into evidence because, he says, the state failed to lay a proper predicate. Before the state played the tape in court, the appellant objected on the grounds that "[n]o proper foundation" had been laid. After an off-the-record discussion, the state played the tape and the court received it into evidence.
As this court recently held in Jennings v. State, 588 So.2d 540 (Ala.Cr.App. 1991), an objection that a proper foundation or predicate has not been made is specific enough to put the trial court on notice that counsel is challenging the prosecutor's procedure of presenting the evidence.
This court held in Molina v. State, 533 So.2d 701 (Ala.Cr.App.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989), that "`sound tapes ... are admissible when a witness testifies they are reliable representations of the subject sound.'" 533 So.2d at 712, quoting C. Scott, 3 Photographic Evidence § 1297 at 97 n. 42, 5 (2d ed. 1969) (1987 Pocket Part); see also Jackson v. State, 582 So.2d 598 (Ala.Cr.App.1991). In this case, no evidence was offered to show that the tape was an accurate recording of the drug transaction. The tape had been referred to by both the appellant and the state during the trial. However, when the appellant objected to the tape's being played, the court should have sustained his objection until the state presented evidence that the recording accurately represented the alleged drug transaction. The requirements of Molina were not satisfied here. Without a foundation for its receipt having been *80 established, the court erred in receiving the tape recording into evidence.

III
The appellant also argues that the trial court erred in receiving into evidence a statement he made to the police several days after his arrest. He told the police that when they searched his house after his arrest, they failed to find cocaine that he had hidden under a rug. He added that he had flushed the cocaine down the toilet when he returned home after being released.
The appellant objected to this evidence at trial on the grounds that it was evidence of a crime not charged. The court overruled the objection and stated that the evidence "goes to availability and opportunity, motive." We do not consider that the statement was admissible for the reasons stated by the trial court. However, the statement would be admissible for purposes of impeachment. C. Gamble, McElroy's Alabama Evidence § 155.02 (4th ed. 1991). The appellant had testified that he did not have any cocaine at his house. Evidence may be received if admissible under any rule of evidence. The court should have given an instruction limiting the consideration of this evidence only to the impeachment of the appellant.
For the reasons stated in parts I and II of this opinion, the judgment must be, and it is hereby, reversed and the cause remanded to the Circuit Court for Baldwin County for a new trial or other proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur, except MONTIEL, J., who concurs in part and dissents in part with opinion.
MONTIEL, Judge, concurring in part, dissenting in part.
I concur in the holding in Part III of the majority opinion, but I must respectfully dissent from the holding in Parts I and II of the majority opinion.
In Part I of its opinion, the majority states that the appellant's confession was not voluntarily made because his confession was the result of a promise made by a police officer. During the hearing on the motion to suppress the appellant's confession, the following occurred:
"Q. Did you tell him that if he cooperated, thatthat you couldn't promise him anything; that the only thing you could do would be to relay that information that he cooperated to the District Attorney?

"A. Yes, sir. I probably told him that."
(R. 2) (emphasis added). In its opinion, the majority, citing Ex parte Weeks, 531 So.2d 643 (Ala.1988), erroneously concludes that the representation made by the officer in the above colloquy "is a promise of reward or hope of reward which renders the confession involuntary." This case is clearly distinguishable from Weeks. In Weeks, although the officer told the defendant that if he cooperated the officer would make his cooperation known to the district attorney, the case turned on the fact that the arresting officer admitted that he offered to "`give something favorable to him if [Weeks] would help,' just prior to eliciting the inculpatory statement." Weeks, 531 So.2d at 644 (emphasis added). In the case at bar, I believe that the officer made no promises to the appellant and that he did not offer anything favorable to the appellant. Further, the appellant's statement appears to have been made some two hours after the officer made his comment.
The facts of this case are more akin to those of Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973), which was discussed with approval in Ex parte Matthews, 601 So.2d 52 (Ala.1992), cert. denied, ___ U.S. ___, 112 S.Ct. 2996, 120 L.Ed.2d 872 (Ala.1992).
"In Wallace, an officer promised the defendant that if he told the truth the officer would discuss his cooperation with the probation officer. This Court found that this statement alone was not enough to render the defendant's statement involuntary. `The statement was neither an express nor implied promise of reward if appellant admitted his guilt ... [The officer's] remarks were no stronger than to convey the idea to appellant that *81 it would be best or better to tell the truth if he made a statement.' Wallace, 290 Ala. at 206, 275 So.2d at 638."
Matthews, 601 So.2d at 54.
The facts here appear to be identical to those in Wallace but for the fact that the police officer would inform the district attorney of the appellant's cooperation in this case rather than the probation officer, as was the case in Wallace. However, an examination of the record reveals that there is another distinction between this case and Wallace. In this case, the appellant's "cooperation" apparently refers to the appellant's assisting the police in other drug investigations rather than to his cooperation in making his statement. The record indicates that the officer was telling the appellant that if he helped the police in other drug investigations, the officer would inform the district attorney of his cooperation in those investigations. This is certainly a permissible and desirable police practice. Thus, it appears that the officer's statement had nothing to do with inducing the appellant's statement.
I believe that Wallace delineates the bright line between what is and what is not acceptable police conduct. A statement made by a police officer that if a defendant cooperates his cooperation will be passed on to others is permissible and does not constitute coercion.
"A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not sufficient inducement so as to render a subsequent incriminating statement involuntary. United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir.1978); see Martinez [v. Estelle], 612 F.2d [173] at 180 [(5th Cir. 1980]) [United States v.] Hernandez, 574 F.2d 1362, 1370 n. 14 (5th Cir.1978), [United States v.] Robertson 582 F.2d 1356 at 1361-63 and n. 14 [(5th Cir. 1978)]. Likewise, a `truthful and noncoercive statement of the possible penalties which an accused faces' may be given to the accused without leading to an involuntary statement. Ballard, 586 F.2d at 1063."
United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir.1985). However, if the defendant is promised anything, threatened with anything, or offered anything favorable, the line has been crossed. See Matthews, 601 So.2d at 52 ("[Y]ou might get boot camp"; "We might cut you a deal"; "I can go back and tell the district attorney, Corey Matthews cooperated with me or I can go back and tell the district attorney that Corey Matthews did not cooperate with me"); [emphasis added]; Holmes v. State, 598 So.2d 24 (Ala.Crim. App.1992) (officer promised the defendant that several charges against him would be dropped if he confessed); Hamlet v. State, 574 So.2d 951 (Ala.Crim.App.1990) (if the defendant cooperated, the police would make a "recommendation"). Clearly, this case does not cross the line established in Wallace.
"`Generally, the line to be drawn between permissible police conduct and conduct deemed to induce or to tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police.
"`. . . .
"`... [T]he cases indicate that government agents may validly make some representations to defendant or may discuss cooperation without rendering the resulting confession involuntary. Thus, government agents may initiate conversation on cooperation, and may promise to make defendant's cooperation known to the prosecutor or the court, so long as the interrogators make it clear that they have no power to grant immunity or confer other benefits....'"
Jackson v. State, 562 So.2d 1373, 1383 (Ala. Crim.App.1990) (quoting 23 C.J.S. Criminal Law § 907 (1989)). Here, the officer's statement was not an improper inducement or a promise and, further, the appellant's statement was not affected by the officer's offer to tell the district attorney that the appellant cooperated with the police in other *82 drug investigations. The trial court's determination of the voluntariness of the appellant's statement was not "manifestly contrary to the great weight of the evidence." Malone v. State, 452 So.2d 1386 (Ala.Crim.App.1984).
I also dissent from that part of the majority's opinion holding that the tape recording of the drug transaction was inadmissible. The following portion of the record is relevant to this issue:
"Q. [Prosecutor] All right, sir. And I believe your attorney has asked you once or twice if you wanted the tapes played; is that basically correct?
"A. [Defendant] Yes, sir.
"Q. Both the telephone conversation and the tape that was made from the transmission in the apartment; is that correct?
"A. Yes, sir.
"Q. Sir, if your attorney has the tape player, we have got the tape here.
"MR. DASINGER [Defense counsel]: No proper foundation, Your Honor.
"THE WITNESS: Sir?
"MR. SLADE: Do I understand that counsel for Defendant is now objecting to the tape, Your Honor?
"THE COURT: Approach.
"(Off-the-record discussion).
"THE COURT: We will take a brief recess while we get the tape recorder set up. Take about eighteen minutes because they've got to fiddle with that tape recorder.
"(Recess held).
"(Jury in).
"THE COURT: All right, ladies and gentlemen, you have heard something about a tape. You will now hear the tape.
"(Whereupon, the tape was played).
"THE COURT: Is that as loud as that will go?
"MR. DASINGER: (Attorney nods head).
"(Whereupon, the playing of the tape was concluded).
"MR. SLADE: Your Honor, ask this be marked as State's four and admitted.
"THE COURT: Admit it.
"(State's exhibit four admitted)." (R. 265-266)
On examination by defense counsel, the appellant said that he would like the tape played and, again, on examination from the prosecution, he stated that he wanted the tape played. After objection from defense counsel because of a lack of a proper predicate, an off-the-record discussion was held, after which, the tape was played. There was no adverse ruling by the court and defense counsel never stated after the off-the-record discussion that he continued to object to the tape being played on the basis that a proper predicate was not established. Jefferson v. State, 449 So.2d 1280 (Ala. Crim.App.1984). Jackson v. State, 582 So.2d 598 (Ala.Crim.App.1991). For all we know, defense counsel could have consented to the playing of the tape without the State's laying a proper predicate and is now using this ground for appeal. There was no adverse ruling on the objection, and the record clearly shows that it was the appellant who wanted the tape played.
For the reasons discussed above, I must dissent from Parts I and II of the majority opinion.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).